**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| FLEETPRIDE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BRANDON JACKSON and ACTION TRUCK PARTS & HEAVY EQUIPMENT, LLC, a/k/a JACKSON TRUCK PARTS & HEAVY EQUIPMENT, LLC,<br><br>Defendants. | ) | Case No. CIV-26-3196-PRW |

**ORDER**

Before the Court is Plaintiff FleetPride, Inc.'s ("FleetPride") Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (Dkt. 4). Defendants filed a Response (Dkt. 10), and the Court held an evidentiary hearing on November 16, 2026, at which both parties presented evidence and argument. Because Defendants had notice and the Court held a hearing, the Court treats the request for a TRO as a request for a preliminary injunction,[1] and **DENIES** the Motion (Dkt. 4).

---

[1] "[W]hen a temporary restraining order is sought on notice to the adverse party, it may be treated by the court as a motion for a preliminary injunction." 13 *Moore's Federal Practice*, § 65.31 (Matthew Bender 3d Ed.); *Kansas Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993) ("[w]hen the opposing party has been notified and a hearing held . . . [on] a motion seeking a [TRO]," the court "follows the same procedure as for a preliminary injunction motion").

***Background***

The following findings are made solely for purposes of resolving the preliminary injunction motion. Where material, the Court distinguishes the parties' allegations from facts established by the preliminary injunction record. References to witness testimony include statements made both in declarations and at the hearing.

***The parties and other relevant individuals.*** FleetPride and Action Truck Parts & Heavy Equipment, LLC ("Action Truck Parts & Heavy Equipment") both operate stores in Ponca City, Oklahoma that sell truck parts.[2] Brandon Jackson is "the owner, manager, and member" of Action Truck Parts & Heavy Equipment, which he organized on April 15, 2026.[3]

Harland and Casey McClaskey ("the McClaskeys") are the former owners of a truck parts store that operated in Ponca City, Oklahoma under the name "Action Truck Parts, Inc."[4] Patrick Hudelson was an employee of the McClaskeys at the time that they owned Action Truck Parts, Inc.[5] Casey is also the owner of Legacy Signs, LLC, which sells signs and other products, and which he founded sometime in 2007.[6]

***The events leading up to the parties' dispute.*** On December 5, 2022, FleetPride executed an Asset Purchase Agreement ("APA") with the McClaskeys and Action Truck

---

[2] Jackson Decl. (Dkt. 10-9) ¶ 22; Park Decl. (Dkt. 4-8) ¶ 15.

[3] Jackson Decl. (Dkt. 10-9) ¶ 2; Sec'y of State Filing (Dkt. 4-7).

[4] Jackson Decl. (Dkt. 10-9) ¶ 11; APA (Dkt. 4-1), at 42–43.

[5] Jackson Decl. (Dkt. 10-9) ¶ 17.

[6] Casey Dep. (Dkt. 10-7), at 10:11, 16:07–08, 132:24–133:01, 150:14–17.

Parts, Inc. and others, whereby FleetPride purchased Action Truck Parts, Inc.'s business, including its name ("Action Truck Parts"), intangible assets, and goodwill.[7] The agreement also provided that the McClaskeys could not compete with FleetPride in the truck parts business or assist a competing truck parts provider within 150 miles of Action Truck Parts, Inc.'s location for a period of five years, or, during that five-year period, solicit FleetPride's customers or hire or solicit employees of the business (subject to exceptions allowing hiring 180 days after FleetPride terminates an employee, or one year after an employee resigns).[8] The record does not reflect whether FleetPride operated the Ponca City location under the "Action Truck Parts" name once the purchase was finalized.

After the APA, the McClaskeys and Hudelson became employees of FleetPride.[9] Through their "involvement with the acquired Ponca City business and, where applicable, their subsequent work for FleetPride," the McClaskeys and Hudelson "had access to [FleetPride's] nonpublic information," such as "customer contacts, purchasing histories, customer-specific pricing and discounts, margins," "vendor and sourcing information," and other information.[10] Although not bound by the APA, Hudelson entered into a confidentiality and non-solicitation agreement with FleetPride in connection with his employment, which required him to maintain the secrecy of FleetPride's trade secrets and other confidential information after his employment, and abstain from hiring or soliciting

---

[7] Park Decl. (Dkt. 4-8) ¶¶ 7–9; APA (Dkt. 4-1), at 7–8, 42–44.

[8] Park Decl. (Dkt. 4-8) ¶¶ 14–15; APA (Dkt. 4-1), at 28–29, 45, 49–52.

[9] Park Decl. (Dkt. 4-8) ¶¶ 16–19; Ontiveros Decl. (Dkt. 4-9) ¶¶ 6–9.

[10] Park Decl. (Dkt. 4-8) ¶ 21.

FleetPride personnel for a period of time following his employment.[11] Casey also entered into a similar agreement imposing the same or substantially similar obligations.[12]

In February of 2026, Jackson began discussing the possibility of opening up a parts store in Ponca City with Hudelson.[13] Jackson, Hudelson, and Casey engaged in several communications over the following months which FleetPride alleges were either unlawful or pointed to the existence of other unlawful communications and conduct between the three of them. These include: (1) a March 23, 2026 text message from Hudelson to Jackson containing a list of part vendors and the brands and equipment that those vendors sell;[14] (2) an April 15, 2026 email from Jackson to Hudelson and Casey about Rev Parts Management Software, which is a "software that you use to make invoices or to track [parts] inventory";[15] (3) an April 16, 2026 text exchange from Jackson to Hudelson the same day the two met at a country club, in which Jackson states that he was "excited for all of us";[16] (4) a job offer from Jackson to Hudelson sometime in April of 2026;[17] and (5) a May 15, 2026 text message from Hudelson to Jackson containing a prepared statement for his "exit" from FleetPride.[18] FleetPride also points to a note created on Hudelson's phone in February

[11] *Id.* ¶¶ 17–18; Courtroom Audio, TRO Hr'g, at 10:21:30–22:00.

[12] Park Decl. (Dkt. 4-8) ¶¶ 19–20.

[13] Hudelson Dep. (Dkt. 4-4), at 79:19–22.

[14] Hudelson Texts (Dkt. 4-5), at 30–31.

[15] Hudelson Dep. (Dkt. 4-4), at 58:21–60:15; Hudelson Email (Dkt. 4-5), at 36.

[16] Hudelson Dep. (Dkt. 4-4), at 156:20–25; Hudelson Texts (Dkt. 4-5), at 32–33.

[17] Hudelson Dep. (Dkt. 4-4), at 80:01–03.

[18] Hudelson Texts (Dkt. 4-5), at 34.

of 2026 which contained a list of truck parts brands, and which Hudelson testified he created in order to "help" Jackson get started with his business.[19]

In late May of 2026, both Casey and Hudelson left their jobs at FleetPride (Harland was no longer employed by FleetPride as of September of 2024).[20] On June 1, 2026, Action Truck Parts & Heavy Equipment opened, and Hudelson was interacting with potential customers.[21]

Noe Ontiveros, former Branch Manager for FleetPride's Ponca City location, testified that he heard from a certain customer that a business operating under the name "Action Truck Parts" was opening in Ponca City and went to go check it out.[22] He testified that he observed the "Action Truck Parts" name being used and a customer asking to pick up truck parts he had purchased, and he saw Harland there performing "construction-related work" and "helping prepare the building for Action Truck Parts."[23]

Brett Park, who is FleetPride's Regional Senior Director for its North Central Region, which includes the Ponca City area, testified that he reviewed photographs of the Action Truck Parts & Heavy Equipment location, and in those photographs he saw signs in front of the property identifying it as "Action Truck Parts & Heavy Equipment."[24]

---

[19] Hudelson Dep. (Dkt. 4-4), at 149:01–151:14.

[20] Ontiveros Decl. (Dkt. 4-9) ¶¶ 7–9.

[21] Hudelson Dep. (Dkt. 4-4), at 138:24–140:20; Courtroom Audio, TRO Hr'g, at 09:58:15–59:14.

[22] Ontiveros Decl. (Dkt. 4-9) ¶¶ 2–3, 10–11.

[23] *Id.* ¶¶ 12–16.

[24] Park Decl. (Dkt. 4-8) ¶¶ 2–4, 25.

Additionally, a Facebook post shows a user with the account name "Brandon Jackson" providing a phone number in response to another user's request for "the new phone number for Action truck parts."[25]

***FleetPride's loss of revenue.*** FleetPride alleges that its Ponca City location suffered a substantial decline in revenue attributable to competition from Action Truck Parts & Heavy Equipment. According to Ontiveros, after Action Truck Parts & Heavy Equipment opened, "numerous customers materially reduced or ceased purchasing parts from FleetPride's Ponca City operation,"[26] which he at his deposition attributed to Hudelson's and Casey's departure from FleetPride.[27] After taking "all the customer data" for hundreds of FleetPride customers and "pull[ing] it into a spreadsheet,"[28] Park discovered that FleetPride's year-over-year sales data from May through September 9, 2026 "show that business volume at the Ponca City operation declined by approximately eighty-five percent (85%) compared with the same [roughly four-month] period in the prior year."[29] In particular, "ten established accounts that substantially reduced their purchases from FleetPride after Action Truck Parts began operating" account for 89% of the overall decline in business volume.[30] The data showed FleetPride's revenue from these ten accounts

---

[25] Facebook Post (Dkt. 1-10).

[26] Ontiveros Decl. (Dkt. 4-9) ¶¶ 17–21, 25.

[27] Ontiveros Dep. (Dkt. 10-5), at 73:07–16.

[28] Courtroom Audio, TRO Hr'g, at 09:56:24–57:24.

[29] Park Decl. (Dkt. 4-8) ¶ 29.

[30] *Id.* ¶ 30.

beginning to decline on June 1, 2026, the day Action Truck Parts & Heavy Equipment began operating.[31] Moreover, while some of FleetPride's losses at Ponca City can be attributed to other competitors or independent causes, such as "the rising price of diesel," Park testified that the "closest decline" in a FleetPride location in another market was "only six-and-a-half percent."[32]

FleetPride argues that not all of its lost sales can be calculated or recovered, however. According to Ontiveros, because the parts industry revolves around recurring purchases for replacement parts, once a customer shifts their purchases to a competitor, "the relationship is difficult to recover and may never return to its prior level."[33] Park testified that because customers in the parts market "purchase parts and services repeatedly as needs arise. . . . FleetPride cannot reliably calculate all future sales that diverted customers would have generated, the referrals and additional work that will be lost, the value of confidential information used to target those opportunities, or the time and expense required to restore the Ponca City operation's goodwill and competitive position."[34] He also testified that "[a] customer that shifts its purchasing pattern [to Action Truck Parts & Heavy Equipment] may never return, even if FleetPride later recovers damages for past sales."[35]

---

[31] Courtroom Audio, TRO Hr'g, at 09:58:15–59:14.

[32] *Id.* at 10:24:46–25:24.

[33] Ontiveros Decl. (Dkt. 4-9) ¶¶ 22–23.

[34] Park Decl. (Dkt. 4-8) ¶¶ 33–36.

[35] *Id.* ¶ 34.

Both Ontiveros and Park agreed that FleetPride's loss of business to Action Truck Parts & Heavy Equipment remains ongoing.[36] When asked at the hearing what actions FleetPride might take if the decline in revenue continued, Park stated that FleetPride may have to close the Ponca City location. Park also testified that three employees presently work at FleetPride's Ponca City location, and that the last time a FleetPride location was closed down, the company was unable to retain that store's employees.[37]

***FleetPride's related action in Texas.*** Before bringing this action, FleetPride brought another action against Defendants, the McClaskeys, and Hudelson in the 162nd Judicial District Court of Dallas County, Texas. It obtained a TRO against each of the defendants, which "broadly prohibited [them] from competing with [FleetPride] or interfering with its business relationships, employees, or confidential and trade-secret information."[38] The McClaskeys then removed that action to the United States District Court for the Northern District of Texas, and that court dissolved the TRO as to Jackson and Action Truck Parts & Heavy Equipment.[39] FleetPride then filed a notice of voluntary dismissal as to those defendants,[40] and brought this action against them here. As of now,

---

[36] Ontiveros Decl. (Dkt. 4-9) ¶ 25; Park Decl. (Dkt. 4-8) ¶ 31.

[37] Courtroom Audio, TRO Hr'g, at 10:09:05–10:10:08.

[38] *FleetPride, Inc. v. McClaskey*, No. 3:26-cv-3104-K, 2026 WL 2959696, at *1 (N.D. Tex. Oct. 1, 2026).

[39] *Id.* at *1–2.

[40] *FleetPride, Inc. v. McClaskey*, No. 3:26-cv-3104-K, Dkt. 59 (N.D. Tex. Nov. 4, 2026) (notice of voluntary dismissal); *see also* Dkt. 65 (N.D. Tex. Nov. 12, 2026) (rendering Defendants' motion to dismiss Texas action against them moot in light of the voluntary dismissal).

the Texas litigation remains ongoing pending a decision on FleetPride's motion for preliminary injunction in that case.[41]

***FleetPride's Motion for Preliminary Injunction.*** FleetPride's Complaint brings five claims against Defendants. The instant Motion (Dkt. 4) pursues three of these claims as a basis for a preliminary injunction. In particular, FleetPride alleges that Defendants (1) misappropriated its trade secrets by using confidential information the McClaskeys or Hudelson acquired at FleetPride to compete for and acquire FleetPride's customers; (2) interfered with FleetPride's contractual rights under the APA and Casey's and Hudelson's confidentiality and non-solicitation agreements by inducing the McClaskeys and Hudelson to breach those agreements; and (3) engaged in a deceptive trade practice and unfair competition by misappropriating the trade name "Action Truck Parts," which FleetPride acquired under the APA.

FleetPride asks the Court to preliminarily enjoin Defendants from (1) "employ[ing], utliz[ing], [or] contract[ing] with the McClaskey[s]," who are barred from competing with FleetPride under the APA;[42] (2) using the "Action Truck Parts" trade name;[43] (3) using any proprietary or confidential information acquired by Hudelson or Casey through their employment with FleetPride;[44] (4) contacting or soliciting the 10 major customers

[41] *FleetPride, Inc. v. McClaskey*, No. 3:26-cv-3104-K, Dkt. 54 (N.D. Tex. Oct. 28, 2026) (motion for preliminary injunction).

[42] Courtroom Audio, TRO Hr'g, at 10:53:47–54:28.

[43] *Id.* at 10:54:28–54:33; Mot. for Prelim. Inj. (Dkt. 4), at 23.

[44] Courtroom Audio, TRO Hr'g, at 11:02:47–56; Mot. for Prelim. Inj. (Dkt. 4), at 20.

comprising most of FleetPride's lost sales;[45] and (5) seeking out Harland or Casey's assistance in competing with FleetPride.[46] FleetPride argues that monetary damages are inadequate to fully address its injuries because the lost revenue from customers shifting over to Action Truck Parts and the potential closure of the Ponca City location are "difficult to calculate proactively or prospectively."[47] It also points to a provision in the APA stating that any breach of the agreement "may cause irreparable injury" to FleetPride and that "money damages may not provide an adequate remedy."[48] Defendants argue otherwise, pointing to testimony from Park in the Texas action that FleetPride can "identify and calculate the amount" of its monetary damages.[49]

### *Legal Standard*

A preliminary injunction is an "extraordinary remedy."[50] A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors an injunction; and (4) an injunction is in the public interest.[51]

### *Legal Analysis*

---

[45] Courtroom Audio, TRO Hr'g, at 11:19:23–39, 11:21:01–36; Mot. for Prelim. Inj. (Dkt. 4), at 21–22.

[46] Mot. for Prelim. Inj. (Dkt. 4), at 20–21.

[47] Courtroom Audio, TRO Hr'g, at 11:22:03–18.

[48] *Id.* at 10:33:34–34:29; APA (Dkt. 4-1), at 29.

[49] Park Dep. (Dkt. 10-6), at 204:23–205:09.

[50] *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1245–46 (10th Cir. 2017) (citations omitted).

[51] *Id.*; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013).

The Court begins and ends its analysis with the second preliminary injunction factor. Because the Court concludes that FleetPride has not shown that it will suffer irreparable harm in the absence of an injunction, it need not address the remaining factors.[52]

"A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."[53] For instance, a plaintiff can show irreparable injury when, absent an injunction, it would suffer "intangible harms such as loss of goodwill or competitive market position."[54] Or it can show that damages cannot be proven to "any reasonable degree of certainty."[55] However, "[d]emonstrating irreparable harm is not an easy burden

---

[52] FleetPride brings this action pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). FleetPride alleges that the amount in controversy exceeds $75,000, that it is a citizen of Alabama and Texas, and that Defendants are citizens of Oklahoma. Compl. (Dkt. 1) ¶¶ 15–17. The Complaint alleges that Jackson lives in Ponca City, Oklahoma and is the sole member of Action Truck Parts. *Id.* ¶¶ 13, 16. Defendants have not disputed that allegation and Jackson has declared that he is "the owner, manager, and member" of Action Truck Parts. Jackson Decl. (Dkt. 10-9) ¶ 2; *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) (holding that a limited liability company takes the citizenship of each of its members). Accordingly, the Court determines that it has subject matter jurisdiction.

[53] *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001) (citation omitted).

[54] *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004).

[55] *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990) (citation omitted).

to fulfill."[56] "The movant must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages."[57]

FleetPride argues that it will suffer intangible harm from Defendants' alleged unlawful use of its trade secrets, interference with its contractual rights, and misappropriation of its trade name in the form of loss of goodwill and customer relationships. It also argues that it will suffer monetary damages in the form of lost revenue as customers shift their purchases to Action Truck Parts & Heavy Equipment, and that the amount of such damages is difficult to calculate because the truck parts industry is characterized by customers with irregular and dynamic purchasing patterns, who largely make purchases only as the need for replacement parts arises. Finally, FleetPride points to the potential future closure of its Ponca City location.

However, "not all plaintiffs who have already suffered lost customers, stolen trade secrets, or intangible injury can show a sufficient probability of future irreparable harm to warrant a preliminary injunction."[58] For instance, the Tenth Circuit has reversed the grant of a preliminary injunction prohibiting a former employee from soliciting his former employer's customers after agreeing with a district court's determination that the employer

[56] *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation and internal quotation marks omitted).

[57] *Id.* (alteration adopted) (citation and internal quotation marks omitted).

[58] *Id.* at 1271.

had failed to establish irreparable harm because the resulting damages "could be reasonably quantified."[59]

Here, FleetPride's alleged harms all reduce, ultimately, to a loss of business revenue that the evidence establishes can be calculated with a reasonable degree of certainty at trial. In particular, Park's testimony establishes that FleetPride has calculated the year-over-year decline in business volume at its Ponca City location, identified ten accounts responsible for 89% of that decline, and determined when those accounts began substantially reducing their purchases. Park's testimony also establishes that FleetPride can compare its Ponca City sales data with other markets to assess the extent to which its losses may be attributable to causes other than Defendants' allegedly unlawful conduct.

Although FleetPride alleges that Defendants have misappropriated its trade secrets and deceptively used its trade name, it hasn't shown that Defendants' continued conduct threatens an irreparable loss of confidential information, goodwill, or competitive position, distinct from the economic losses discussed above. Nor has FleetPride established a sufficient likelihood that its Ponca City location will close before the Court can adjudicate its claims. Although Park speculated that continued losses may eventually require the location to close, the record does not establish when such a closure might occur or that it is likely during the pendency of this action. Nor do the contractual acknowledgments change the analysis. Defendants signed none of them, and the APA says only that a breach

[59] *Id.* (citing *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1139–40, 1143–44 (10th Cir. 2017)).

"may cause irreparable injury" and that damages "may not provide an adequate remedy." An agreement that irreparable harm *could* occur is no substitute for proof that it will.

Additionally, that FleetPride can't predict today which future orders it will lose doesn't make those losses unascertainable. By trial, losses during this case will be past losses, measurable by the same account-level, year-over-year comparisons FleetPride has already performed. Thus, any additional losses incurred during the pendency of this action can be quantified and compensated through monetary damages at trial, at which point the Court can also consider the propriety of any injunctive relief necessary to prevent future harms. Accordingly, FleetPride has failed to establish that it will suffer irreparable harm absent a preliminary injunction.

***Conclusion***

For the foregoing reasons, FleetPride has failed to establish that it is entitled to a preliminary injunction. The Motion for Preliminary Injunction (Dkt. 4) is therefore **DENIED**.

**IT IS SO ORDERED** this 23rd day of November 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE